# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**PATRICIA GRIMES,** *as the next best friend and Personal Representative of the Estate of Karl Grimes,*

        **Plaintiff,**

      v.

**DISTRICT OF COLUMBIA,** *et al.*

        **Defendants.**

)
)
)
)
)
)
)
)
)
)
)

**FILED**

**MAR 3 0 2018**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**Civil Case No. 08-2024 (RJL)**

## MEMORANDUM OPINION

(March **30** 2018) [Dkt. # 101]

    Decedent Karl Grimes ("K.G.") was a juvenile offender in Defendant District of Columbia's custody ("District"). On or about August 29, 2005, K.G. was committed to the Oak Hill Juvenile Detention Facility ("Oak Hill"). *See* Compl. ¶¶ 10, 17 ("Compl.") [Dkt. # 1]. Decedent's mother Patricia Grimes ("Grimes" or "plaintiff") filed this suit alleging that on or about November 23, 2005, K.G. was attacked by several Oak Hill residents, resulting in his death. *Id.* ¶¶ 11, 15. According to plaintiff, the attack occurred because "the facility was under-staffed and/or improperly-staffed to accomplish the detention of young males in a reasonably safe environment." *Id.* ¶ 12. The District of Columbia "knew of the unsafe conditions at the Oak Hill Facility," but, "through deliberate indifference, did nothing." *Id.* ¶ 18. Plaintiff alleges that the District's "deliberate indifference" to these conditions violated decedent's Eighth Amendment rights. *Id.* ¶ 21.

Plaintiff also alleges negligent hiring, training, and supervising on the part of the District.[1] *Id.* ¶ 26.

Before this Court is the District's Renewed Motion for Summary Judgment. [Dkt. # 101]. For the reasons that follow, the Motion is **GRANTED**.

## BACKGROUND

The District's Renewed Motion for Summary Judgment follows a very lengthy and somewhat convoluted path of judicial proceedings, with multiple modifications to the discovery schedule and multiple trips to our Court of Appeals.

### I.     Proceedings Following November 6, 2009 Scheduling Order

On November 6, 2009, the Court issued its Scheduling Order. [Dkt. # 34]. That Order specified that Rule 26(a)(1) Initial Disclosures would be due on November 30, 2009; Written Discovery Requests on December 30, 2009; Proponent's Rule 26(b)(4) Expert Statement on January 18, 2010; and Opponents' Rule 26(b)(4) Expert Statement on March 18, 2010. *Id.* Per the Scheduling Order, Discovery would close on May 31, 2010, and Dispositive Motions would be due July 15, 2010. *Id.*

To say the least, Discovery was slow-going. Neither plaintiff nor the District filed a Rule 26(a)(1) Statement. Only Dimensions Health Corporation, *d/b/a* Prince George's

---

[1] Plaintiff's Complaint included a count against Dimensions Health Corporation *d/b/a* Prince George's Hospital Center ("PGHC"). *See* Compl. ¶¶ 29–34. These counts have been dismissed. *See* Order, 11 Civ. 7053 (D.C. Cir. Oct. 19, 2011) (ordering that the motion for summary affirmance filed by PGHC "be dismissed as moot," since plaintiff "has represented that she is not appealing the judgment in favor of this party") [Dkt. # 78].

Hospital Center ("PGHC"), no longer a party to this case, filed a Rule 26(a)(1) Statement.[2] [Dkt. # 36]. On January 7, 2010, Defendants District of Columbia and PGHC jointly filed a Motion for Entry of Protective Order. [Dkt. # 37]. Then, on January 15, 2010, more than two months after the Rule 26(a) Initial Disclosures deadline, and not having received Initial Disclosures from plaintiff, PGHC filed a Motion to Compel and for Sanctions. [Dkt. # 38]. PGHC sought an order to compel plaintiff's Rule 26(a) Statement, noting that Defendant PGHC had been prejudiced by plaintiff's failure to observe the Court's timeline, since Initial Disclosures "serve[] as a building block for the remainder of discovery." *Id.* ¶ 6. "Without this information, Defendant [PGHC] is severely limited in its ability to pursue discovery and prepare its defense." *Id.* Indeed, PGHC noted, in light of the discovery deadline of May 31, 2010, "there is a very limited period of time remaining for [PGHC] to pursue discovery in this matter." *Id.* ¶ 7.[3]

PGHC's Motion to Compel and for Sanctions spurred plaintiff to action. Little more than one week later, plaintiff filed a Motion for Extension of Time to Complete Discovery. [Dkt. # 40]. The Motion contained no explanation, however, as to why plaintiff had failed

---

[2] PGHC's Statement listed forty-three witnesses, all of whom "provided care and treatment" to the decedent. [Dkt. # 36]. The Statement also set out three categories of documents—(i) decedent's medical records, (ii) "[c]omputed tomography scans" of decedent's brain, and (iii) decedent's "brain flow study." *Id.* These, the Statement represented, would all be made available upon plaintiff's request. *Id.* Appended to the Statement was a copy of PGHC's insurance policy. *Id.*

[3] PGHC attached a Certificate of Good Faith to this Motion. That Certificate stated that PGHC's counsel had contacted plaintiff's counsel on December 7, 2009, advising plaintiff that her Initial Disclosures were overdue, and requesting their service by December 11, 2009. The Certificate also stated that PGHC's counsel had sent a second letter on January 4, 2010 to plaintiff's counsel "advising that Plaintiff's Answers to Interrogatories and Response to Request for Production of Documents were overdue" and requesting their production by January 9, 2010. [Dkt. # 38]. According to the Certificate, plaintiff's counsel did not reply to either letter, nor did plaintiff produce her Initial Disclosures. *Id.*

to file the Rule 26(a)(1) Initial Disclosures, as required by the Scheduling Order. *Id.* Instead, plaintiff represented to the Court that due to the lack of protective order, neither defendant had responded to discovery. *Id.*[4] Plaintiff advised that, without defendants' responses, she could not file the expert report due on March 18, 2010. *Id.* For this reason, plaintiff asked that the deadlines specified in the Scheduling Order each be moved back 60 days. *Id.* In plaintiff's view, 60 days "would provide ample time to complete discovery in this rather complex case." *Id.* ¶ 4. The District of Columbia consented to the Motion, but PGHC opposed. *Id.*

Shortly thereafter, on January 27, 2010, the District of Columbia moved for an extension of time to complete discovery, requesting 30 days from the issuance of the Protective Order to respond to the interrogatories and requests for production of documents served by plaintiff. [Dkt. # 41]. On February 4, 2010, the Court issued the Protective Order. [Dkt. # 43]. This set out procedures for the use of "juvenile social service records, medical records, investigative reports, [Department of Youth Rehabilitation Services] records, psychiatric and/or psychological records, educational records, financial records, or other personal and private information, documents and things" over the course of the litigation.[5] *Id.* ¶ 1.

---

[4] This was, to say the least, an odd position given the plain requirement of Rule 26(a): that parties "must, *without awaiting a discovery request*, provide to the other parties" the information specified by Fed. R. Civ. P. 26(a)(1)(A)(i)–(iv). *Id.* (emphasis added).

[5] D.C. law imposes special restrictions on material concerning minors in the custody of the Department of Youth Rehabilitation Services ("DYRS"). DYRS may only release juvenile records to the Office of the Attorney General, Civil Division through a special order signed by the presiding judge of the D.C. Family Court. *See* Def.'s Mot. for Add'l Time to Respond to Disc. and to Serve Written Disc. (Jan. 27, 2010) (citing D.C. Code §§ 2-1515.06, 16-2332(d)) [Dkt. # 41]. Judge William M. Jackson of the Superior Court

Other than PGHC's Rule 26(b)(4) expert designations [Dkt. # 48], the docket reflects no discovery activity over the next two months.[6] On March 30, 2010, PGHC filed a Motion to Dismiss. [Dkt. # 49]. PGHC's motion relied on both plaintiff's and the District's failure to identify and proffer experts under the timeline set out in the Scheduling Order. This is because "[i]n order to prove a prima facie case of medical malpractice, a plaintiff must produce expert testimony." Mem. in Supp. of Mot. to Dismiss at 3 (citing *Nichols v. Greater Se. Cmty. Hosp.*, 382 F. Supp. 2d 109 (D.D.C. 2005)) [Dkt. # 49-1].

The Court ruled on these four sets of motions—PGHC's Motion to Compel and for Sanctions; Plaintiff's Motion for Extension of Time to Complete Discovery; the District's Motion for Additional Time to Respond to Discovery and to Serve Written Discovery; and PGHC's Motion to Dismiss—on June 21, 2010. PGHC's Motion to Dismiss and Motion to Compel and for Sanctions were denied; and Plaintiff's and the District's respective motions were granted *nunc pro tunc*.

## II.     Proceedings Following Amended Scheduling Order

Pursuant to this round of orders, the deadlines in the Scheduling Order were, *nunc pro tunc*, each moved back 60 days. Under the amended Scheduling Order, the Initial 26(a)(1) Disclosures deadline was January 30, 2010; Written Discovery Requests were due

---

of the District of Columbia, Family Court issued an order on December 14, 2009, granting "the [District's] Motion for a Special Order to Permit Inspection and Copying of Department of Youth Rehabilitation Services Records for the limited purpose of defending" the instant suit. Order, *In re K.G.*, Dkt. No. 2009 FSP 358 (D.C. Sup. Ct. Family Div. Dec. 14, 2009) [Dkt. # 41-1].

[6] During this time, the docket reflected briefing in support of and in opposition to PGHC's Motion to Compel and for Sanctions [Dkts. ## 45, 47] and in support of and in opposition to the District's Motion for Extension of Time to Respond to Discovery and to Serve Written Discovery [Dkts. ## 44, 46].

on March 1, 2010; Proponent's Rule 26(b)(4) Expert Statement was due March 20, 2010; Opponents Rule 26(b)(4) Expert Statement was due May 20, 2010; Discovery would close on July 29, 2010; and Dispositive Motions were due on September 12, 2010. In addition, the District received, *nunc pro tunc*, 30 days from the entry of the Protective Order (February 4, 2010) to "respond to the interrogatories and requests for production of documents served by plaintiff and co-defendant [PGHC]." *See* Def.'s Mot. for Add'l Time to Respond to Disc. and to Serve Written Disc. (Jan. 27, 2010) [Dkt. # 41].

The parties made no entries on the docket until September 9, 2010, when PGHC filed a Motion to Dismiss and/or in the Alternative Motion for Summary Judgment. [Dkt. # 53]. In the interim, neither plaintiff nor the District filed Rule 26(a) Initial Disclosures. Nor did they file Rule 26(b)(4) Statements. Nor did they notice the deposition of PGHC's fact or expert witnesses.

Given this lack of discovery, PGHC essentially recited the arguments made in its earlier Motion to Dismiss. PGHC argued that, because plaintiff had failed to designate any experts, she could not establish (i) the appropriate standard of care and (ii) whether a breach occurred. The lack of expert testimony would defeat both plaintiff's claims and the District's cross-claims. Moreover, the brief went on to say, PGHC had proffered experts in its own properly-submitted Rule 26(b)(4) Statement that (i) established the correct standard of care and (ii) demonstrated that PGHC had complied with that standard. PGHC further argued that plaintiff and the District "must be precluded from designating experts at this late stage of the litigation." Mem. in Supp. at 7 [Dkt. # 53-1]. In PGHC's telling, the failure to designate experts "represents a general pattern of failure to prosecute their

claims." *Id.* at 9. Days later, the District filed its own Motion for Summary Judgment, which rested primarily on the argument that plaintiff, despite having the burden of proof, had failed to prosecute her claim. [Dkt. # 55].

Plaintiff did not oppose either motions on the merits. Instead, she filed a Motion to Strike the District's Motion for Summary Judgment on December 1, 2010. [Dkt. # 57].[7] The Motion to Strike focused on an alleged ethical conflict, namely the prior involvement of Peter J. Nickles, Attorney General for the District of Columbia, in a pending class action suit against the District, *Jerry M. v. District of Columbia*, C.A. No. 1519-85. That suit had alleged that the Oak Hill facility "had deplorable conditions, was understaffed, inadequately supervised, overcrowded, and inherently dangerous." Mot. to Strike ¶ 3 [Dkt. # 57]. Nickles had served as lead counsel in the *Jerry M.* suit, of which K.G. was a class member. The fact that Nickles' name appeared on the briefs on behalf of the District in the present case, plaintiff contended, meant that Nickles "[c]learly . . . [had] a conflict of interest." *Id.* ¶ 5. The District opposed the motion to strike. [Dkt. # 63].

On December 10, 2010, the District filed a Motion for Order granting the District's Motion for Summary Judgment as conceded, due to plaintiff's failure to respond on the merits. [Dkt. # 58]. For its part, PGHC filed two motions: one seeking an order granting its dispositive motion as to plaintiff's claims [Dkt. # 61], and a second seeking an order granting its dispositive motion as to the District's cross-claim [Dkt. # 60]. Both of PGHC's motions asked the Court to deem its earlier motions as conceded, due to the failure of

---

[7] Plaintiff filed her Motion to Strike after having sought [Dkt. # 56], and obtained, an extension of time to oppose PGHC's and the District's dispositive motions.

plaintiff and the District to file briefs in opposition. Shortly thereafter, plaintiff filed a Motion for Extension of Time to File an Opposition to the District's Motion to Treat Motion for Summary Judgment as Conceded. [Dkt. #64]. Plaintiff did not oppose PGHC's motion.

On January 10, 2011, this Court issued a Memorandum Order. [Dkt. # 65]. The order granted as conceded (i) the District's Motion for Summary Judgment [Dkts. ## 55, 58], (ii) PGHC's Motion to Dismiss and/or in the Alternative Motion for Summary Judgment against the District of Columbia [Dkts. ## 53, 60], and (iii) PGHC's Motion to Dismiss and/or in the Alternative Motion for Summary Judgment against plaintiff [Dkts. ## 53, 61]. The order denied as moot plaintiff's Motion to Strike [Dkt. # 57].

Plaintiff then filed a Motion to Alter and/or Amend the Court's Judgment with regard to Defendant District of Columbia. [Dkt. # 66].[8] Although plaintiff acknowledged that she had failed to designate an expert, she attributed this to "not [having] been provided the opportunity to gather necessary facts." *Id.* at 4 (citing Fed. R. Civ. P. 56(d)). In particular, plaintiff complained that the Court granted her motion to amend the initial Scheduling Order *nunc pro tunc*. *Id.* For this reason, plaintiff asserted that she "was deprived of the opportunity to take depositions and follow-up on the discovery that was provided by the District." *Id.* Plaintiff "[did] not explain, however, what she was doing during the discovery time she had." *Grimes v. Dist. of Columbia*, 794 F.3d 83, 92 (D.C. Cir. 2015). Plaintiff also disputed the District's characterization of its Motion for Summary

---

[8] Plaintiff did not challenge the Court's judgment as to PGHC. *Id.*

Judgment as conceded, because the Motion to Strike was filed prior to the deadline for the opposition brief. [Dkt. # 66]. The matter was fully briefed, and on May 3, 2011, this Court denied plaintiff's Motion, concluding that plaintiff had failed to meet her burden under Fed. R. Civ. P. 59(e). *See* 5/3/2011 Min. Order.

### III. The Court of Appeals' 2012 Decision

Plaintiff appealed. [Dkt. # 73]. On March 2, 2012, the Court of Appeals remanded for the Court to "consider the effect of the 2010 amendments to Federal Rule of Civil Procedure 56 and 'state on the record the reasons for granting or denying [the summary judgment] motion.'" *Grimes v. Dist. of Columbia*, No. 11-7053 (D.C. Cir. Mar. 2, 2012) (per curiam) (quoting Fed. R. Civ. P. 56(a)). Consistent with this instruction, on April 19, 2012, this Court directed the parties to submit briefs addressing "the effect[on this case, if any] of the 2010 amendments to Federal Rule of Civil Procedure 56," as well as, "the interaction of amended Federal Rule of Procedure 56(e) and the accompanying 2010 Advisory Committee Note, Federal Rule of Civil Procedure 55, and Local Rule 7(b)." [Dkt. # 81].

The parties briefed the issue, and I entered my ruling on February 12, 2013. [Dkt. # 88]. I explained in that opinion that the District was entitled to summary judgment based on the "uncontroverted assertions in defendant's September 13, 2010 motion." *Id*. at 5. For plaintiff's Eighth Amendment claim, for instance, I noted that:

> [P]laintiff does not counter defendant's assertions that there is no record evidence: (1) 'that any employee at Oak Hill acted with deliberate indifference to a known safety risk;' (2) 'of a history of assaults on youth at Oak Hill;' (3) 'that any Oak Hill employee knew or should have known that a fight between [K.G.] and another youth was going to take place;' or (4)

'that the youth that fought with [K.G.] had a history of assaultive behavior while at Oak Hill.'

*Id.* (quoting Def.'s Mot. Summ. J. at 7). "Pursuant to Federal Rule of Civil Procedure 56(e)(2), the Court considers defendant's assertions to be undisputed for purposes of the motion." *Id.* at 5–6. This Court also determined that plaintiff's failure to designate an expert on the applicable standard of care foreclosed her claim of negligent hiring, training, and supervision. *See id.* at 6. This is because "the average layperson does not possess the technical knowledge needed to judge staffing and security needs at a juvenile detention facility." *Id.*; *see also Farooq v. MDRB Corp.*, 275 F. App'x 11, 12 (D.C. Cir. Apr. 9, 2008) (affirming grant of summary judgment when plaintiff had failed to designate an expert on the standard of care governing supervision of security personnel). Plaintiff appealed. [Dkt. # 90].

## IV.    The Court of Appeals' 2015 Decision

On July 21, 2015, our Circuit Court vacated my grant of summary judgment in favor of the District, and remanded the case. [Dkt. # 92]. The Court of Appeals concluded that this Court had "erred in the sequence in which it rendered its decisions." *Grimes*, 794 F.3d at 86. This is because "a claim of counsel's conflict of interest calls into question the integrity of the process in which the allegedly conflicted counsel participates," requiring the Court to "resolve a motion to disqualify counsel before it turns to the merits of any dispositive motion." *Id.* Relying on a recent Sixth Circuit case, *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 654 (6th Cir. 2013), and despite the "broad discretion in managing its docket" that the district court typically enjoys, *Grimes*, 794 F.3d at 90 (citing *Jackson v.*

*Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151–52 (D.C. Cir. 1996)), the Court of Appeals held that "[o]nce a party moves to disqualify an adverse party's counsel, the district court may not entertain a dispositive motion filed by the very counsel alleged to be conflicted until the court has first determined whether that counsel is disqualified," *id*.

After this holding, the Court of Appeals went on to offer "limited guidance on the remaining issues the parties briefed." *Id*. at 86; *see also id*. at 91 ("We limit ourselves to some considerations that may inform the proceedings on remand."). Those "remaining issues" likely to arise before the district court were (i) whether to grant Grimes additional time to complete discovery, *see id*. at 92–93, and (ii) whether to grant summary judgment, *see id*. at 93–95. The Court of Appeals noted that plaintiff "does not explain . . . what she was doing during the discovery time she had," but hinted that, nonetheless, this Court should provide an opportunity for additional discovery on remand. *See id*. at 92 ("'[A]ffording an opportunity to properly support or address [a] fact' is 'in many circumstances . . . the court's preferred first step.'" (quoting Advisory Comm. Note, Fed. R. Civ. P. 56(e)(1))). Indeed, the panel noted, "Rule 56(d) establishes a mechanism for nonmovants who lack the facts they need to seek an opportunity to gather more information before responding to a motion for summary judgment." *Id*. (citing Fed. R. Civ. P. 56(d)); *cf. id*. ("Of general relevance . . . is Rule 55's implicit preference for judgments on the merits . . . .").[9]

---

[9] On the other hand, the Court of Appeals observed that 56(e) does permit "a less forgiving approach in appropriate circumstances." *Grimes*, 794 F.3d at 92. To wit, Rule 56(e) "allows a court to 'consider [a]

Second, the Court of Appeals took the opportunity to reject plaintiff's arguments as to the proper standard for summary judgment. *See id.* at 93 ("These claims badly distort the requirements of Rule 56."). The Court wrote that "the burden on a defendant moving for summary judgment may be discharged without factual disproof of the plaintiff's case." *Id.* Instead, "the defendant need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in her favor on one or more essential elements of her claim." *Id.*

## V.     Proceedings on Remand

On remand, this Court issued an order requiring the parties to submit a joint proposed schedule to re-brief the merits of plaintiff's Motion to Disqualify the Office of the Attorney General. [Dkt. # 93]. On October 13, 2015, this Court approved the parties' proposed schedule, which provided for briefing to be complete by December 28, 2015. On September 13, 2016, this Court denied plaintiff's Motion to Disqualify the Office of the Attorney General. [Dkt. # 100].[10]

### 1.  The January 11, 2017 Memorandum Order

This, not surprisingly, prompted the District to renew its Motion for Summary Judgment. [Dkt. # 101]. Shortly thereafter, the parties filed a joint status report, [Dkt. # 102], outlining their respective positions on the course this litigation should take. Plaintiff contended that the District's Motion for Summary Judgment was "untimely and

---

fact undisputed' if it has not been properly supported or addressed as required by Rule 56(c)." *Id.* (quoting Fed. R. Civ. P. 56(e)).

[10] Plaintiff did not move for reconsideration of this decision. Nor does her summary judgment briefing challenge my ruling on her Motion to Disqualify.

inappropriate," and sought the entry of a discovery schedule that, *inter alia*, would allow for depositions, interrogatories, and expert designations. Joint Status Report 2–3 [Dkt. # 102]. Plaintiff filed a separate Motion for Extension of Time to Respond to the District of Columbia's Renewed Motion for Summary Judgment or, Alternatively, for Entry of the Parties['] Proposed Scheduling Order. *See* Mot. for Extension 2–3 [Dkt. # 103].[11]

Upon consideration of the parties' joint status report, this Court issued an order charting a path forward. *See* 1/11/2017 Mem. Order [Dkt. #104]. In that Order, I observed that "[s]ummary judgment is premature . . . unless the parties have 'had a full opportunity to conduct discovery.'" *Id*. at 2 (quoting *Orlowske v. Burwell*, 318 F.R.D. 544, 547 (D.D.C. 2016)). Therefore, "when faced with a summary judgment motion she believes is premature, the non-moving party may request more time to conduct discovery pursuant to Rule 56(d) by submitting an affidavit which 'state[s] with sufficient particularity . . . why discovery [is] necessary," *id*. (quoting *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008)), and shows that she "has diligently pursued discovery," *id*. (quoting *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Castle Hill Health Care Providers, LLC*, 312 F.R.D. 678, 683 (D.D.C. 2015)). After citing a case outlining the requirements for Rule 56(d) motions, *Convertino v. DOJ*, 684 F.3d 93, 99–100 (D.C. Cir. 2012), this Court stated that "resolution of plaintiff's request for discovery through Rule 56 procedures is consistent with our Circuit Court's guidance as to the management of this matter." *Grimes*, 794 F.3d at 91–93. For these reasons, I ordered that plaintiff had "up to and including February 15,

---

[11] It is unclear what plaintiff meant by "parties' proposed scheduling order." [Dkt. # 103]. The only jointly proposed scheduling order on the docket was filed October 6, 2009. [Dkt. # 33].

2017"—more than one month from the date of the order—"to file any motion for discovery pursuant to Rule 56(d)." *Id*. Then, I ordered that "plaintiff's deadline to oppose defendant's Motion for Summary Judgment is [deferred] pending the Court's resolution of any Rule 56(d) Motion." *Id*. at 3.

Plaintiff did *not* take up this Court's invitation to file a Rule 56(d) Motion. Instead, on February 15, 2017, the deadline for submitting a Rule 56(d) Motion, plaintiff simply filed a Rule 26(a)(2) Statement on the docket, purporting to designate an expert. [Dkt. # 105]. The next day, after the Rule 56(d) Motion deadline had passed, plaintiff filed a motion styled "Plaintiff's Renewed Motion for Entry of a Scheduling Order Pursuant to the Court's Order of January 11, 2017." [Dkt. # 106]. That motion did not "show[,] by affidavit or declaration that, for specified reasons, [plaintiff] cannot present facts essential to justify [her] opposition" absent further discovery. 6/13/2017 Mem. Order [Dkt. # 109]; *see also* Fed. R. Civ. P. 56(d). The motion contained *no* explanation as to why plaintiff did not file a Rule 56(d) Motion. *Id*.

Instead, the motion contained multiple inaccuracies and misrepresentations. Pl's Renewed Mot. for Entry of Scheduling Order [Dkt. # 106]. First, the motion erroneously represented that the discovery schedule sought by plaintiff had been "proposed by the parties." *Id*. at 1. Second, the motion stated "that no scheduling order, that had not by its own terms expired by the time it had been entered, has ever been entered in this case," *id*., and accused the Court of "steadfast[ly] refus[ing] to enter a scheduling order in this case." This representation was plainly inaccurate, as the Court issued a Scheduling Order,

consistent with the one proposed by the parties, on November 6, 2009. [Dkt. # 34].[12] After explaining that she had retained an expert, and conceding that "this case has not been properly litigated," plaintiff requested a new scheduling order that extended the expert discovery deadline to February 15, 2017, such that plaintiff's purported expert designation would be timely. [Dkt. # 106].

## 2. The June 12, 2017 Order

On June 13, 2017, this Court issued a memorandum order denying plaintiff's motion, and striking plaintiff's purported expert designation. 6/13/2017 Mem. Order [Dkt. # 109]. I explained that "[p]laintiff's refusal to file a Rule 56(d) motion," as directed by the Court, "is unfortunate." *Id.* at 2. This is because "Rule 56(d) establishes a mechanism for nonmovants who lack the facts they need to seek an opportunity to gather more information before responding to a motion for summary judgment." *Id.* (quoting *Grimes*, 794 F.3d at 92). Indeed, "Rule 56(d) motions are 'granted almost as a matter of course, unless the non-moving party has not diligently pursued discovery of the evidence.'" *Id.* (quoting *Convertino*, 684 F.3d at 99). By choosing not to file a Rule 56(d) motion—despite the clear signals from the Court of Appeals and this Court's own instruction—plaintiff once "again squandered her opportunity to 'explain . . . what she was doing during the discovery time she had.'" *Id.* (quoting *Grimes*, 794 F.3d at 92). "[I]n doing so," plaintiff "may also

---

[12] That Order specified that Initial 26(a)(1) Disclosures would be due on November 30, 2009; Written Discovery Requests on December 30, 2009; Proponent's Rule 26(b)(4) Statement on January 18, 2010; and Opponents' Rule 26(b)(4) Statement on March 18, 2010. *Id.* Per the Scheduling Order, Discovery would close on May 31, 2010, and Dispositive Motions would be due July 15, 2010. *Id.* Each of these deadlines was later extended, *nunc pro tunc*, for an additional 60 days.

have made her task of opposing defendant's motion for summary judgment that much more difficult." *Id.*

Reluctantly, "as plaintiff [had] chosen her course," I allowed briefing on the District's Motion for Summary Judgment. *Id.* The matter is now, finally, fully briefed, and ripe for review.

## LEGAL STANDARD

### I.     Summary Judgment Standard

A party is entitled to summary judgment when the pleadings, discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "may affect the outcome of the litigation." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden of identifying evidence that demonstrates that there is no genuine dispute of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). A movant can satisfy that burden by "citing to particular parts of materials in the record," or by showing "that [the nonmovant] cannot produce admissible evidence to support" the "presence of a genuine dispute." Fed. R. Civ. P. 56(c); *see also Grimes*, 794 F.3d at 93 ("[D]efendant need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in her favor on one or more essential elements of the claim"); *id.* at 98 (Griffith, J., concurring) ("As our

majority opinion explains, *Celotex* does not require a defendant moving for summary judgment to do anything more than point out to the court that the record cannot support the plaintiff's claim." (citing *Celotex*, 477 U.S. at 317)).

If the party moving for summary judgment meets its initial burden, then the nonmoving party—here, plaintiff—must identify the "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the nonmoving party fails to proffer evidence to support its assertions, then the moving party may prevail by citing that "failure of proof." *Id.* at 323.

When evaluating a summary judgment motion, a court must "examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to the nonmoving party." *Robinson v. Pezzat*, 818 F.3d 1, 8 (D.C. Cir. 2016) (internal quotation marks omitted). To establish a genuine dispute of material fact sufficient to defeat summary judgment, however, the nonmoving party must come forward with more than "a scintilla of evidence" or the "mere allegations or denials" of her pleadings. *Anderson*, 477 U.S. at 248, 252.

## II. Elements of Plaintiff's Claims

Here, plaintiff asserts two claims against the District: (i) one arising under the Eighth Amendment of the U.S. Constitution, *see* U.S. Const. amend. VIII, and pursued through 42 U.S.C. § 1983, and (ii) a second sounding in negligent hiring, training, and supervision.

For the first claim, plaintiff must make a two-part showing. *See Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). She must (i) state a claim for the

predicate constitutional violation, and (ii) show that a custom or policy of the municipality caused the violation. *Id.*; *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 694 (1978) (holding that municipality must be "moving force of the constitutional violation" for liability to attach). These are distinct inquiries, and serve different purposes. *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 121–124 (1992); *see also Farmer v. Brennan,* 511 U.S. 825, 840–42 (1994); *City of Canton v. Harris,* 489 U.S. 378, 388 n. 8 (1989); *Baker,* 326 F.3d at 1306.

As for the negligence claim, plaintiff bears the burden of proof on three issues: (i) the applicable standard of care, (ii) whether defendant deviated from that standard, and (iii) whether there is a causal relationship between that deviation and the plaintiff's injury. *See Levy v. Schnabel Found. Co.,* 584 A.2d 1251, 1255 (D.C. 1991) (citing *Toy v. Dist. of Columbia,* 549 A.2d 1, 6 (D.C. 1988)).

## ANALYSIS

### I. Expert Report

Plaintiff attaches an expert report by Cameron K. Lindsay ("Lindsay") to her Opposition. *See* [Dkts. ## 111-2, 111-3]. Previously, plaintiff had purported to designate Lindsay as an expert. [Dkt. # 105]. This Court struck that purported designation on June 13, 2017. [Dkt. # 109]. For the reasons that follow, I will not consider the contents of the Lindsay Report in reviewing the District's Renewed Motion for Summary Judgment.

This Court possesses "broad discretion in managing its docket and determining the order in which a case should proceed." *Grimes,* 794 F.3d at 90; *see also In re Fannie Mae Secs. Litig.,* 552 F.3d 814, 822 (D.C. Cir. 2009). This is particularly true in discovery

disputes, where "a trial court's authority is at its zenith." *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (citing *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 580 (D.C. Cir. 2010)); *see also Watts v. SEC,* 482 F.3d 501, 507 (D.C. Cir. 2007) ("The basis for our deferential, abuse-of-discretion review of district court discovery rulings is the recognition that supervising the to-and-fro of district court litigation falls within the expertise, in the first instance, of district courts and not courts of appeals.").[13]

In the instant procedural posture, at the summary judgment stage, Rule 56(d) affords the opportunity for expert and factual discovery of the kind required to prosecute plaintiff's claim. *See U.S. ex rel. Folliard*, 764 F.3d at 26–27. On appeal, the Court of Appeals identified this Rule as "a mechanism for nonmovants who lack the facts they need to seek an opportunity to gather more information before responding to a motion for summary judgment." *Grimes*, 794 F.3d at 92.

Rule 56(d) "is not self-executing," however. *Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 28 (1st Cir. 2013). Instead, it requires the party seeking additional discovery to make a three-part showing as to why additional discovery is necessary. *See U.S. ex rel. Folliard*, 764 F.3d at 26 (citing *Convertino*, 684 F.3d at 99). The party seeking additional discovery must file an affidavit (i) outlining the particular facts it intends to discover, and describing why those facts are necessary to the litigation, (ii) explaining why it could not produce those facts in opposition to the motion

---

[13] "District courts should resolve each [Rule 56(d)] request based on its application of the *Convertino* criteria to the specific facts and circumstances presented in the request." *U.S. ex rel. Folliard*, 764 F.3d at 26–27.

for summary judgment, and (iii) showing that this information is in fact discoverable. *See Convertino*, 684 F.3d at 99–100.

Because Rule 56(d) is not self-executing, I provided painstaking guidance to the parties on the way in which plaintiff might file a Rule 56(d) motion for additional discovery. This was calculated to afford the parties "a full opportunity to conduct discovery." 1/11/2017 Mem. Order at 2 (quoting *Orlowske v. Burwell*, 318 F.R.D. 544, 547 (D.D.C. 2016)) [Dkt. # 104]. After summarizing the requirements of a Rule 56(d) motion, I ordered that plaintiff had "up to and including February 15, 2017"—more than one month from the date of the order— "to file any motion for discovery pursuant to Rule 56(d)." *Id*. Then, I ordered that "plaintiff's deadline to oppose defendant's Motion for Summary Judgment is deferred pending the Court's resolution of any Rule 56(d) Motion." *Id*. at 3.

Plaintiff did not take up this Court's invitation to file a Rule 56(d) Motion. Instead, for reasons of her own, on February 15, 2017, the deadline for submitting a Rule 56(d) Motion, plaintiff simply filed a Rule 26(a)(2) Statement on the docket, purporting to designate an expert. [Dkt. # 105]. The next day, after the deadline for a Rule 56(d) Motion had passed, plaintiff filed a motion styled "Plaintiff's Renewed Motion for Entry of a Scheduling Order Pursuant to the Court's Order of January 11, 2017." [Dkt. # 106]. That motion did not "show[,] by affidavit or declaration that, for specified reasons, [plaintiff] cannot present facts essential to justify [her] opposition" absent further discovery. 6/13/2017 Mem. Order [Dkt. # 109]; *see also* Fed. R. Civ. P. 56(d). Indeed, the motion contained *no* explanation as to why plaintiff did not file a Rule 56(d) motion, or why

plaintiff had waited until after the expiration of the Rule 56(d) deadline to file the motion for a scheduling order. *Id.*

Pursuant to this Court's authority to determine discovery, and consistent with the rationale of Rule 56(d) not to excuse dilatory tactics,[14] I struck plaintiff's purported expert witness designation and denied her "Renewed Motion for Entry of a Scheduling Order." [Dkt. # 109].[15] "In electing not to file a Rule 56(d) motion, plaintiff has again squandered her opportunity to 'explain . . . what she was doing during the discovery time she had,' and in doing so, may also have made her task of opposing defendant's motion for summary judgment that much more difficult." *Id.* at 2 (quoting *Grimes*, 794 F.3d at 92).

Now, in opposing summary judgment, plaintiff seeks primarily to rely on an expert report produced by Cameron K. Lindsay. Because the purported expert designation of Cameron was stricken, however, this report is inadmissible and therefore not properly part

---

[14] Because plaintiff did not file a Rule 56(d) Motion, I need not consider whether she satisfied the showing required for additional discovery under our Circuit's case law. Nevertheless, I note that the most important of those factors is a showing of diligence. This Circuit has stated that Rule 56 "is not properly invoked to relieve counsel's lack of diligence." *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) (citing *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992)). This is because Rule 56 is meant "to minister to the vigilant, not to those who slumber upon perceptible rights." *Rivera-Almodovar*, 730 F.3d at 29 (quoting *Resolution Trust Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 1st Cir. 1994)). Courts in our Circuit routinely deny Rule 56(d) Motions for lack of diligence. *See, e.g., Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Castle Hill Health Care Providers, LLC*, 312 F.R.D. 678, 684 (D.D.C. 2015) (denying Rule 56(d) motion due to non-movant's lack of diligence in pursuing discovery).

[15] The Federal Rules are clear as to the disclosure of expert witnesses. "A party *must* make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D) (emphasis added). Courts routinely strike experts or expert reports that fail to comply with court discovery deadlines. *See Gutierrez v. Hackett*, 131 F. App'x 621, 625–26 (10th Cir. 2005) (affirming exclusion of expert report filed after deadline); *Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1362–63 (7th Cir. 1996) (affirming exclusion of expert report); *Watson v. Long Island R.R. Co.*, 500 F. Supp. 2d 266, 272 (S.D.N.Y. 2007); *Farris v. Intel Corp.*, 493 F. Supp. 2d 1174 (D.N.M. 2007) (discussing broad judicial discretion in striking expert report); *Beller ex rel. Beller v. U.S.*, 221 F.R.D. 696 (D.N.M. 2003) (striking supplemental expert report filed after close of court's discovery deadline).

of the record. If a party fails properly to disclose information or identify a witness as required by Rule 26(a) or (e)—which it will seek to use to support its claims or defenses—"the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see generally Unique Indust. Inc. v. 965207 Alberta Ltd.*, 764 F. Supp. 2d 191, 204 (D.D.C. 2011) ("[T]he Federal Rules authorize the court to . . . prohibit the plaintiff from relying on the evidence produced after the close of discovery as a sanction for its failure to comply with the court's scheduling order."). Plaintiff makes no attempt to explain why use of the expert report is "substantially justified or is harmless." *Id.*

## II.    Remaining Documentary Evidence

In addition to the Lindsay Report, plaintiff attaches five exhibits to her Opposition: (i) the "Blue Ribbon Report," [Dkt. # 111-4], (ii) the D.C. Inspector General Report [Dkt. # 111-5], (iii) the Amended Complaint filed in *Jerry M. v. Dist. of Columbia*, Civ. No. 1519-85 (Sup. Ct. D.C.) [Dkt. # 111-6], (iv) a *Washington Post* article concerning the Oak Hill facility dated May 15, 2004 [Dkt. # 111-7], and (v) congressional statement by Rep. Mike DeWine concerning the Oak Hill facility dated April 19, 2004 [Dkt. # 111-8]. Plaintiff also appears to suggest that the Court of Appeals made factual findings concerning the conditions of the Oak Hill facility that this Court may consider in deciding the District's motion. *See* Opp'n at 11 & n.2 (citing *Grimes*, 794 F.3d at 86) [Dkt. # 111].

Although plaintiff need not "produce evidence in a form that would be admissible at trial," *Celotex*, 477 U.S. at 324, she must produce evidence that is "capable of being converted into admissible evidence." *Gleklen v. Democratic Cong. Campaign Comm.*,

*Inc.,* 199 F.3d 1365, 1369 (D.C. Cir. 2000) (forbidding hearsay evidence from "count[ing]" toward the creation of a genuine issue of material fact and stating that "[v]erdicts cannot rest on inadmissible evidence," but noting that "a nonmovant is not required to produce evidence in a *form* that would be admissible at trial"). Therefore, "'depositions, answers to interrogatories, . . . admissions on file,' and 'affidavits' are the evidentiary materials listed in Rule 56(c) and are the materials 'one would normally expect the nonmoving party' to use in showing that there are genuine issues of material fact." *Bush v. Dist. of Columbia*, 595 F.3d 384, 387 (D.C. Cir. 2010) (quoting *Celotex,* 477 U.S. at 324).

Here, plaintiff makes *no* attempt to establish that the five exhibits are "capable of being converted into admissible evidence." *Gleklen*, 199 F.3d at 1369; *see also Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 11 (D.D.C. 2005) ("Even after *Celotex*, it is 'well-settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" (citing *Beyenne v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)); *see also id.* ("[A]bsent a showing of admissibility . . . appellant may not rely on rank hearsay . . . to oppose proper motions for summary judgment." (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990))). Plaintiff plainly intends to rely on these documents for the truth of the matter asserted, rendering them inadmissible hearsay under Fed. R. Evid. 801(c)(2). *See* Opp'n at 11 & n.2 [Dkt. # 111]. Because plaintiff makes no effort to demonstrate the potential admissibility of the contents of these documents, this Court cannot rely on them in reviewing the District's Renewed Motion for Summary Judgment.

Separately, plaintiff appears to suggest that the Court of Appeals' description of the Oak Hill facility somehow constitutes evidence for purposes of the District's summary judgment motion. *See* Opp'n at 11 n.2 (citing *Grimes*, 794 F.3d at 86). But plaintiff fails to show why the factual account of the Court of Appeals' decision in *Grimes*, 794 F.3d 83, can be converted into admissible evidence. Indeed, of course, it can't ! Thus, absent such a showing, I cannot rely on the Court of Appeals' factual description of the Oak Hill facility for purposes of this Motion.

### III.  Eighth Amendment Claim

Due to a lack of diligence in pursuing the Rule 56(d) motion, plaintiff's Eighth Amendment claim has faltered yet again at the summary judgment stage.

In order to prevail on her constitutional claim against the District, plaintiff must show that (i) a constitutional violation occurred, and (ii) the District was "the moving force of the constitutional violation," *i.e.*, that an official policy or custom of the District caused the constitutional injury. *See Monell*, 436 U.S. at 694. "[A]t the very least," this showing requires "an affirmative link between the policy and the particular constitutional violation alleged." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985).

Under the first prong, the Supreme Court has announced that the Eighth Amendment guarantees "humane conditions of confinement," including "adequate . . . medical care" and "reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For this reason, prison officials must "protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Prison officials

act with deliberate indifference when they "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

Under the second prong, as our Circuit has explained, "[t]here are a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983." *Baker*, 326 F.3d at 1306. These include (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (3) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Id.*

Expert testimony may be required to establish constitutionally deficient medical care. *See Pearson v. Prison Health Servs.*, 850 F.3d 526, 536 (3d Cir. 2017); *see also Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002); *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1186 (E.D. Cal. 2011); *but see Oldham v. Chandler-Halford*, 877 F. Supp. 1340, 1357 (N.D. Iowa 1995). Courts have relied on expert testimony to establish overcrowding, as well. *See Brown v. Plata*, 563 U.S. 493, 535 (2011); *Morgan v. Sprout*, 432 F. Supp. 1130, 1149 (S.D. Miss. 1977); *but see Gilland v. Owens*, 718 F. Supp. 665, 687 (W.D. Tenn. 1989).

In her pleadings, plaintiff attributes K.G.'s death to "the unsafe conditions at Oak Hill Facility which had existed for a substantial period of time." Compl. ¶ 18. "Notwithstanding its knowledge of the conditions at the Oak Hill Facility, the District, through deliberate indifference, did nothing to correct [those] conditions . . . ." *Id.* The

District, therefore, "allow[ed] . . . acts which deprived Karl Grimes of his constitutional right to minimally adequate care and safety." *Id.* ¶ 21.

Plaintiff's Eighth Amendment claim rises or falls based on the expert report. *See* Opp'n at 10–11 [Dkt. # 111]. This is because plaintiff relies on the report to establish key facts underlying his legal claims. *See id.* at 10 (describing Lindsay Report as providing "record evidence of deliberate indifference on the part of the District of Columbia"); *id.* (stating that the Lindsay Report "identifies many of the facts from which a jury could determine deliberate indifference on the part of the District of Columbia, including but not limited to inattention of the medical needs of plaintiff's decedent and persistent overcrowding"). *Id.*[16] Plaintiff relies on the expert report to establish the facts of the incident itself, *see* Report ¶¶ 2–3 [Dkt. # 111-2], and the medical response within Oak Hill to K.G.'s injury, *id.* ¶¶ 4, 7, 26–31. Plaintiff also uses the report to compare Oak Hill's protocols to the national standards. *See, e.g., id.* ¶¶ 6, 8. While these are material elements of plaintiff's case, it is not appropriate to rely on an expert to establish such facts, *In re Citric Acid Litig.,* 191 F.3d 1090, 1102 (9th Cir. 1999) ("The law is clear . . . that an expert report cannot be used to prove the existence of facts set forth therein."), and, in any event, Lindsay's designation was properly stricken from the record as inadmissible.

Finally, because plaintiff has failed even to attempt to show the potential admissibility of the remaining exhibits attached to her Opposition, *e.g.,* the Blue Ribbon

---

[16] The Lindsay Report, in turn, purports to rely in significant part on accounts of K.G.'s treatment at Oak Hill that do not appear elsewhere in the record. Because these documents are not part of the record, this Court cannot consult them in considering the motion for summary judgment.

Report, this record has scarce evidence on which plaintiff may rely at the summary judgment stage. Indeed, Plaintiff has not even attempted to meet her burden to explain (i) why the exhibits attached to her Opposition constitute permissible evidence at the summary judgment stage, and (ii) how these exhibits, without the facts alleged in the expert report, could persuade a reasonable juror that a District custom, practice, or policy caused the alleged constitutional violation in this case. For these reasons, plaintiff's Eighth Amendment claim must fail.

## IV.    Negligent Training, Hiring, and Supervision

The absence of an expert report similarly forecloses plaintiff's negligence claim. For her negligent hiring, training, and supervision claim, plaintiff must establish (i) the applicable standard of care, (ii) a violation of that standard, and (iii) injury flowing from that violation. *See Levy*, 584 A.2d at 1255 (citing *Toy*, 549 A.2d at 6). The D.C. Court of Appeals has repeatedly stated that expert testimony is required to establish the standard of care, "unless the subject matter is 'within the realm of common knowledge and everyday experience.'" *Dist. of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000) (quoting *Dist. of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982)). As to prison staffing and security, the standard of care is certainly one such subject-matter requiring expert testimony, *see, e.g., Clark v. Dist. of Columbia*, 708 A.2d 632, 634 (D.C. 1997); *Dist. of Columbia v. Moreno*, 647 A.2d 396, 398 (D.C. 1994), because the average layperson does not possess the technical knowledge needed to judge staffing and security needs at a juvenile detention facility, *see Farooq*, 275 F. App'x at 12. Thus, without the Lindsay Report, plaintiff lacks the expert testimony necessary to make out her negligent training,

hiring, and supervision claim. The District is therefore entitled to summary judgment on this count, as well.

## CONCLUSION

Mindful that summary judgment is appropriate only if both parties have "had a full opportunity to conduct discovery," *Anderson,* 477 U.S. at 257, this Court has, time and again, provided plaintiff such an opportunity. Indeed, I have gone so far as to offer painstaking instruction on how to seek and obtain that discovery at this very stage of the case. Notwithstanding the Court's efforts, the plaintiff failed to file a Rule 56(d) motion seeking leave to conduct additional discovery, and failed to explain why any of the exhibits attached to her Opposition are capable of being converted into admissible evidence. Without any such evidence, plaintiff simply cannot make the showing required to defeat a motion for summary judgment under Rule 56 and binding precedent.

Thus, for all of the foregoing reasons, the Court **GRANTS** the District's Renewed Motion for Summary Judgment [Dkt. # 101]. A separate order consistent with this opinion will be issued this day.

RICHARD J. LEON
United States District Judge